No. 00-052

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 81

GREG L. HAMPTON and ROBYN HAMPTON,

Plaintiffs and Appellants,

v.

LEWIS AND CLARK COUNTY, and its

BOARD OF COUNTY COMMISSIONERS,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Jonathan Motl, Reynolds, Motl & Sherwood, Helena, Montana

For Respondents:

K. Paul Stahl, Deputy Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs: August 17, 2000
Decided: May 3, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Greg L. Hampton and Robyn Hampton (the Hamptons) appeal the orders entered by the First Judicial District Court, Lewis & Clark County granting summary judgment in favor of Lewis & Clark County and its Board of County Commissioners (hereinafter the County, or the Board) and denying the Hamptons' motion for summary judgment.

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The following facts are not in dispute, and only those of relevance are recited herein.

¶4 The Hamptons filed a claim on March 25, 1998, seeking a declaratory judgment that an agricultural-use-only covenant on property they owned was "invalid and is *void ab initio*." The Hamptons were quit claimed the approximately 12.3-acre parcel of land by James and Carol Turner (the Turners) on April 10, 1996, and filed their deed on September 11, 1997. The parcel is located in the South Hills area within the city limits of Helena, Montana.

¶5 The Turners placed the restrictive covenant on the parcel in 1993 in order to sever it from a then existing 14.5-acre tract and avoid undergoing subdivision review, pursuant to the agricultural-use exemption under § 76-3-207(1)(c), MCA. A private residence was located on the retained parcel. Subsequent to the division, the Turners sold and conveyed the retained residential property to another party. The buyers of the house on the two-acre parcel, the Holkums, are not parties in this dispute. Thus, from an original whole of approximately 14.5 acres, the Turners in 1993 created what will be referenced herein as Parcel A (the Holkums' parcel) and Parcel B, which is the parcel at issue.

¶6 It is undisputed that Parcel B, which is undeveloped wooded property, has not been used for any agricultural purposes by either the Turners or the Hamptons. Likewise, it is undisputed that the surrounding area in which the parcel is located in mostly residential coupled with undeveloped open space. It is also undisputed, however, that the Turners filed a certificate of survey on April 8, 1993, when they divided the whole tract that

identified them as owners of Parcel B, which would be subject to:

> [T]he following covenant which shall run with the real property and be binding on all parties having any right, title, or interest in the described property or any part thereof. This covenant may be revoked by mutual consent of the owners of the parcel in question and the governing body of Lewis and Clark County, State of Montana. The governing body is deemed to be a party to and may enforce this covenant. TO WIT:
>
> The parcel of land shown on the attached certificate of survey as containing less that twenty (20) acres, and described as Tract B will be used exclusively for agricultural purposes.

¶7 The County accepted the survey creating the two parcels, identified as COS 503150/A, along with a signed "Certificate of Facts Exempting Division of Land for Agricultural Purposes from Review as a Subdivision."

¶8 After selling and conveying Parcel A, the Turners quit claimed Parcel B to the Hamptons in 1996. That the Hamptons, particularly Greg Hampton, would hold title to the property is of significance in the current controversy.

¶9 It is undisputed that at one time Greg Hampton and his former wife owned the property, and in fact conveyed the then undivided 14.5 acres by warranty deed to the Turners in November of 1990. The Hamptons claim--and the County does not deny--that the Turners had agreed to reconvey what would become Parcel B to the Hamptons, having paid only for Parcel A. Allegedly this "agreement" stemmed from "pressures" caused by the ongoing divorce proceedings between Greg Hampton and his former wife. Apparently, Greg Hampton attempted to divide the property in the same manner as the Turners, by placing a restrictive covenant on Parcel B with a certificate of survey. The certificate of survey, which is virtually identical to the one filed by the Turners in 1993, was rejected by the County, however, because Greg Hampton was not the titled owner at the time. Thereafter, the Turners did not reconvey the property as agreed, and claimed ownership of the whole tract.

¶10 Shortly after the Turners finally conveyed Parcel B to the Hamptons in 1996, the Hamptons (Greg and his current wife, Robyn) submitted an application to the Lewis and Clark County Board of County Commissioners, requesting that the covenant be lifted. The

Hamptons have maintained that their intent is to build a private residence for themselves on the property. The Board refused to give its consent to revoke the agricultural-use-only covenant. In August of 1997, the Hamptons applied to the Board for a "minor subdivision" to divide Parcel B into two lots. The Board reviewed the proposal and again denied the request. Another request to lift the covenant was denied by the Board in September of 1997. The Hamptons filed their declaratory judgment action on March 25, 1998.

¶11 The Hamptons have not questioned the legality of the process by which the County chose not to give its consent to lift the covenant. Rather, at issue is whether the covenant placed on the parcel by the Turners is one that "runs with the land," meaning it binds the subsequent assigns of both the covenantor and the covenantee. The Hamptons contend that because the covenant imposes only a burden on the property, it is not a covenant that runs with the land, as a matter of law. They also contend that the Turners did not actually covenant with another party via a "transaction" at the time the agricultural-use-only covenant was placed on Parcel B, as required under the Subdivision and Platting Act. Thus, they claim the covenant was either void from the start, or at least unenforceable against them as subsequent purchasers of Parcel B.

¶12 The County contends that the covenant does run with the land as expressly provided in the Turners' 1993 certificate of survey of both parcels, and that as a matter of law such a covenant, pursuant to governing subdivision law, cannot be removed unless the County--as the statutorily authorized "governing body"and party to the covenant--gives its consent.

¶13 The Hamptons also claim that the covenant was not valid from its inception due to the County's failed "duty" to properly analyze and investigate whether the covenant was used by the Turners for the purpose of "evading" subdivision review, and consequently Parcel B should not have been afforded an agricultural-use-only status. The County contends that any review on its part is purely discretionary.

¶14 The Hamptons moved for summary judgment on September 17, 1998. A hearing took place on December 2, 1998. The District Court denied the Hamptons' motion for summary judgment on February 10, 1999. In turn, the County moved for summary judgment on August 3, 1999. A hearing took place November 9, 1999. In addition to the arguments set forth by counsel, Greg Hampton also was called to testify. He stated he had no knowledge that there was an agricultural covenant on the parcel at the time the property was quit claimed to him.

¶15 The court issued it memorandum and order on December 3, 1999, essentially on the same legal grounds as its order denying the Hamptons' earlier motion for summary judgment. In addition to the foregoing recitation of facts, the court also found that the certificate of survey filed by the Turners and "attached documents" contemplated a transaction. The court concluded that the parties "used the specific statutory exemption to effect a division and sale of property without going through subdivision review." Thus, the court concluded, "the various property concepts which the Hamptons rely on do not apply." The court further concluded that state law does not give local governing bodies any authority to decide which parcels of land should be subject to agricultural exemptions, and that the County did not have an affirmative duty to determine the "best" use of the Hampton tract.

¶16 The court also referred to its February 10, 1999 order which stated that "the only authority given a local governing body was to determine whether the property owner was using the [agricultural-use] exemption to evade the requirements of the [Subdivision] Act." The court also concluded in its prior order that "Greg Hampton was well aware of the agricultural covenant and took the property subject to that covenant" and that the Turners "were the only ones who could place a covenant on the property" and anyone purchasing the property would be taking it subject to the covenant.

¶17 The Hamptons appeal both judgments entered by the District Court

## ISSUES RAISED

1. Whether the District Court erred in its determination that a valid agricultural covenant was created?

2. Whether the District Court erred in its determination that the agricultural covenant, if valid, was void as unenforceable?

3. Whether the District Court erred in its determination that Lewis and Clark County met its duty to determine whether the land transaction at issue was an attempt to evade the subdivision act?

4. Whether material facts remain at issue and therefore summary judgment is not appropriate?

## STANDARD OF REVIEW

¶18 This Court reviews an order granting summary judgment *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by the district court. *See Spinler v. Allen*, 1999 MT 160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14. This Court looks to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact. *See Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17.

¶19 When we review a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of law. *See Lane v. Farmers Union Ins.*, 1999 MT 252, ¶ 15, 296 Mont. 267, ¶ 15, 989 P.2d 309, ¶ 15 (citation omitted).

## DISCUSSION

¶20 We will not individually address each issue raised by the Hamptons; rather, each will be addressed according to the following discussion as the specific context arises.

¶21 This matter is governed by the Montana Subdivision and Platting Act, pursuant to §§ 76-3-101 through 625, MCA. Under § 76-3-103(3), MCA, a "division of land" means the segregation of one or more parcels of land from a larger tract--held in single or undivided ownership--by (1) transferring or contracting to transfer title to or possession of a portion of the tract; or (2) properly filing a certificate of survey establishing the identity of the segregated parcels; or (3) properly filing a plat establishing the identity of the segregated parcels.

¶22 Here, it is undisputed that the Turners, by filing COS No. 503150/A in 1993, segregated Parcel B and Parcel A from their original larger 14.5-acre tract of land--an action that undisputedly invoked county review under the Subdivision and Platting Act. It is readily apparent from the certificate of survey instruments that the Turners, at that time, turned to the exemptions under Part 2 of the Act, specifically § 76-3-207(1)(c), MCA, in anticipation of avoiding any further subdivision review and thereby facilitating the conveyance of one or both parcels.

¶23 Under § 76-3-207(1)(c), MCA, "divisions made outside platted subdivisions by gift, sale, or agreement to buy and sell in which the parties to the transaction enter a covenant

running with the land" that the divided land "will be used exclusively for agricultural purposes" are "not subdivisions under this chapter." This exemption also mandates that the covenant must be made revocable only by mutual consent of the governing body and the property owner whose land is burdened by the covenant. Thus, under this exemption, a "division of land," such as the one created by the Turners, need only be surveyed as provided under § 76-3-401, MCA. Nevertheless, pursuant to our interpretive case law, such an exemption must be generally given a narrow interpretation when subject to review for statutory compliance. *See State ex rel. Florence-Carlton Sch. Dist. v. Board of County Comm'rs* (1978), 180 Mont. 285, 291, 590 P.2d 602, 605.

¶24 Here, we agree with the District Court that there are no material facts in dispute as to whether the Turners complied with the requirements of § 76-3-207(1)(c), MCA. For example, it is not disputed that the Turners filed a "declaration of covenant" with their certificate of survey identifying both parcels. The declaration expressly set forth that Tract B would be subject to a restrictive, agricultural-use-only covenant, that the covenant would run with the land, that the covenant would bind "all parties having any right, title or interest in the described property," and that the "governing body" would be deemed a party to the covenant, which included the right to enforce the covenant. Thus, at the time the "division of land" occurred, when Parcels A and B came into existence, the Turners avoided the necessity of undertaking any subsequent subdivision review for the future conveyance of either parcel pursuant to § 76-3-207(1)(c), MCA.

¶25 All discussion (by both parties) that such a restrictive covenant can or cannot "run with the land," pursuant to § 70-17-203(1), MCA, because Parcel B as the "granted" estate is or is not "benefitted" by the covenant is irrelevant here. *See* § 70-17-203(1), MCA (providing that every covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property or some part of it then in existence, runs with the land) and § 70-17-202, MCA (providing that the "only covenants which run with the land are those specified in this part and those which are incidental thereto").

¶26 For starters, a century of litigation concerning various restrictive covenants at law, primarily under the doctrine of "negative easements," has eroded the English common law rule, codified following our adoption of the Field Codes in 1895, that the burden of a real covenant cannot run at law between owners in fee. *See*, *e.g.*, *Northwestern Improvement Co. v. Lowry* (1937), 104 Mont. 289, 66 P.2d 792 (recognizing enforceable "restrictive covenants" contained in a deed that prohibited subsequent purchasers of conveyed lot from using premises for the sale of "vinous, spirituous or fermented liquors as a beverage,

nor for gambling, nor for any immoral purpose" under negative easement analysis). The English rule is, in part, an expression of the once prevailing policy that innocent purchasers in fee should be protected from acquiring encumbered land in the absence of a reliable recording system. *See generally* II American Law of Property § 9.14 (1952). Contrary to the Hamptons, the law review article upon which they rely (which the County characterizes as "the rantings of a misguided idealogue who sits in an ivory tower") addresses this very point.

¶27 Professor Robert G. Natelson was, in fact, referring to the original Field Codes as adopted in Montana when he stated that "a covenant that imposes only a burden upon the granted land does not run." *See* Natelson, *Running With the Land in Montana*, 51 Mont. L. Rev. 17, 51 (1990). Professor Natelson later explained, however, "it appears that at the *present time* the law on the benefit and burden of Montana covenants is as follows: . . . "[p] urely restrictive covenants ("negative easements") may benefit or burden estates in fee simple absolute, whether granted, retained, or, after *Reichert v. Weeden*, owned concurrently." *Running*, 51 Mont.L.Rev. at 70 (emphasis added).[1] *See also Haggerty v. Gallatin County* (1986), 221 Mont. 109, 119-20, 717 P.2d 550, 556-57 (concluding that commercial-use restriction covenant, or "negative easement," on conveyed ski-area property was enforceable); *Reichert v. Weeden* (1980), 190 Mont. 95, 100-102, 618 P.2d 1216, 1219-20 (agreement between property owners restricting operation of tavern construed as an enforceable "negative easement" that ran with the land). Ultimately, it should be noted, Professor Natelson concluded that due to the shadow of uncertainty that falls between the statutory rules and the reality of restrictive covenant case law, the Field Code covenant statutes should be repealed. *See Running*, 51 Mont.L.Rev. at 87.

¶28 The English rule has also been displaced or at least avoided by the "general plan or scheme" doctrine employed by developers to place restrictive covenants on entire subdivisions under the theory that the burdened estates are also "entitled" to the "benefit" of enforcing the mutual covenants against other lot owners. *See generally Town & Country Estates Ass'n v. Slater* (1987), 227 Mont. 489, 492, 740 P.2d 668, 671.

¶29 Aside from the foregoing, and far more critical to our discussion, the agricultural-use-only exemption statute itself implies that the exemption requires the creation of a restrictive covenant--i.e., a burden--on a granted estate in real property that *must* run with the land in order for the exemption to apply. Accordingly, to follow the Hamptons' argument to its logical conclusion would render the exemption a nullity, contrary to our rules of statutory construction which presume that our Legislature does not pass useless or

meaningless legislation, and that the literal application of a statute that leads to absurd results should be avoided. *See Hart-Anderson v. Hauck* (1988), 230 Mont. 63, 70, 748 P.2d 937, 941; *State v. Trimmer* (1985), 214 Mont. 427, 432-33, 694 P.2d 490, 493.

¶30 The clear statutory requirement that the burden must run with the land, which obviously conflicts with the "direct benefit of the property" language under § 70-17-203 (1), MCA, is merely one strand in a consistent pattern of legislated rules which have, over time, refined the general rule imposed on Montana via the Field Codes. *See*, *e.g.*, § 76-3-306, MCA (providing that *all covenants* contained in subdivision instruments shall be considered to run with the land); § 76-6-209, MCA (providing that *all conservation easements* shall be considered to run with the land).

¶31 The Hamptons also argue that no estate was benefitted, and therefore there was no burdened "covenantor" and no benefitted "covenantee" as required by covenants that run with the land. *See*, *e.g.*, § 70-17-201, MCA (providing that "[c]ertain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they had personally entered into them" and that such covenants "are said to run with the land"). We agree with the Hamptons that a "narrow interpretation" of the agricultural-use covenant required under § 27-6-207(1)(c), MCA, requires a "covenantor" and a "covenantee" as a matter of law, in accordance with the general rules of running covenants expressed under §§ 70-17-201 through 206, MCA, and that the "governing body" as a "covenantee" does not satisfy this requirement.

¶32 Nevertheless, we agree at least in part with the County's reasoning on this particular question in that the Turners' estate in the retained land, Parcel A, or the "Remainder Property for Existing House," identified in their certificate of survey, was benefitted in that neither the Turners nor their subsequent grantees, the Holkums, were required to undergo subdivision review due to the severing of residential property from the agricultural-use-only property. *See* § 76-3-103(3), MCA (providing that a conveyance of a tract of record or an entire parcel of land that was created by a previous division of land is not a division of land). The titled owner of the retained residential land would also be benefitted by the preservation of the uncrowded non-residential use of adjacent land, which the Legislature expressly made a purpose of the Subdivision and Platting Act as a whole. *See*, *e.g.*, § 76-3-102, MCA (providing that the purpose the Act is to prevent overcrowding of land, lessen congestion on streets and highways, and require development in harmony with the natural environment).

¶33 Accordingly, we conclude that the District Court did not err in its determination that the Turners placed a valid agricultural-use-only covenant that runs with the land on Parcel B, in compliance with § 76-3-207(1)(c), MCA.

¶34 As to enforceability against the Hamptons as the subsequent purchasers of Parcel B, the argument that the Hamptons did not "enter" the covenant, and were not "parties" to the "transaction" in accordance with § 76-3-207(1)(c), MCA, is without merit.

¶35 For the purpose of illustration, the Turners, while retaining the residential Parcel A, could have just as easily segregated off numerous parcels in 1993 when they filed the certificate of survey, rather than just one, each with the same restrictive agricultural-use covenant. Then, over time, they could have gifted or sold the individual parcels to buyers who, if charged with notice, effectively would have "entered" the covenant for the purposes of § 76-3-207(1)(c), MCA, in the course of completing whatever transaction was necessary for conveyance.

¶36 Therefore, the Hamptons' argument that there was no "transaction" between themselves and the Turners because the conveyance should have been simultaneous with-- and therefore involved an actual bargaining for--the placement of the covenant on the division of the land does not comport with requirements of the Subdivision and Platting Act, where the County's approval of the exemption must necessarily precede the sale and conveyance of any divided property.

¶37 As for whether the Hamptons had notice, in *Kosel v. Stone* (1965), 146 Mont. 218, 221-22, 404 P.2d 894, 896-97, this Court set forth a constructive notice rule that applies to the circumstances at bar. In *Kosel* we observed that a "declaration of restrictions" filed on February 10, 1954, was on file in the office of the Clerk and Recorder of Yellowstone County prior to defendants' purchase of the property in question and was referred to beside the notation of the subdivision plat in that office. Next, we observed that the defendants' deed described the property with reference to the filing of the subdivision plat. We determined, under our constructive notice statutes, that since defendants' deed described the property as being located in the subdivision according to the official plat on file, the official plat became "as much a part of the deed as if fully incorporated therein, and the same situation applies to the declaration of restrictions." *Kosel*, 146 Mont. at 222, 404 P.2d at 897.

¶38 Here, the quit claim deed between Turners and Hamptons expressly referred to COS

503150/A, to which the Turners' declaration of covenant is attached. Furthermore, we agree with the District Court's reasoning that invokes certain principles of equity. As clearly evidenced by the Hamptons' own affidavit, Greg Hampton initiated the agricultural-use covenant on Parcel B by attempting to file a certificate of survey identical to the one the Turners used to divide the property in 1993.

¶39 We therefore agree with the County that but for the Turners' division of the property, and the placing of the covenant on Parcel B in compliance with § 76-3-207(1)(c), MCA, the Hamptons could not have resumed ownership of Parcel B--a course of events that Greg Hampton initiated in his prior dealings with the Turners. That the County, as a party to the covenant, may thereafter choose to enforce the agricultural-use-restriction, as provided by law, was clearly a foreseeable event that the Hamptons were at all times willing to risk for the sake of taking title to Parcel B.

¶40 In light of the circumstances set forth here, we agree with the County that our decision should be aided by certain fundamental equitable principles. *See* § 1-3-101, MCA. Namely, "He who consents to an act is not wronged buy it." *See* § 1-3-206, MCA. And, "An interpretation which gives effect is preferred to on which makes void." *See* § 1-3-232, MCA.

¶41 We conclude, therefore, that the District Court did not err in determining that no material facts remained in dispute as to whether the Hamptons had notice of the agricultural-use-only restrictive covenant, and therefore the covenant was enforceable against them as owners of Parcel B as a matter of law.

¶42 As for the County's alleged duty to determine whether the land transaction at issue was an attempt to evade the subdivision act, we find little merit in this argument as well. The existence of a duty is a question of law for determination by the court; and this Court has held that the ordinarily factual inquiry into a breach of a duty may be determined as a matter of law where reasonable minds could reach but one conclusion. *See Craig v. Schell*, 1999 MT 40, ¶ 12, 293 Mont. 323, ¶ 12, 975 P.2d 820, ¶ 12.

¶43 Here, it is undisputed that the County at no time conducted any sort of extensive evidentiary hearing to investigate whether the division of the tract in question and the placement of the restrictive covenant was for the purpose of "evading" rather than merely "avoiding" review under the Subdivision and Platting Act. Under § 76-3-207(1), the Legislature has provided a caveat to the various "divisions of land" exemptions to

subdivision review that a party may claim. The statute provides that "unless the method of disposition is adopted for the purpose of evading this chapter" the listed divisions of lands are not subdivisions. There are no statutory guidelines or standards--let alone imposed affirmative duties--for how the determination of an "evasion" must be made by a county in either accepting or rejecting a certificate of survey with a claimed exemption.

¶44 We are aware, however, that the County through its Board of Commissioners has the authority to adopt and follow a set of regulations pertaining to claimed exemptions from the Subdivision and Platting Act. *See*, *e.g.*, *State ex rel. Dreher v. Fuller* (1993), 257 Mont. 445, 451, 849 P.2d 1045, 1049 (stating that local governments are authorized to establish procedures to evaluate a proposed conveyance to determine if it is an attempted evasion of the Act and citing *Withers v. County of Beaverhead* (1985), 218 Mont. 447, 450, 710 P.2d 1339, 1341); § 76-3-501, MCA (authorizing adoption of local subdivision regulations). The Montana Constitution supports, however, a liberal construction of these powers granted to local municipalities by the Legislature. *See* Art. XI, Sec. 4(2); *Associated Students of Univ. of Montana v. City of Missoula* (1993), 261 Mont. 231, 235, 862 P.2d 380, 382.

¶45 This Court has indicated (although the parties are noticeably unaware) that the exercise of a county's authority in enforcing its regulations invokes a duty to "evaluate and determine from all the circumstances whether the proposed division of land is based on a purpose to evade the subdivision requirements." *State ex rel. Leach v. Visser* (1988), 234 Mont. 438, 447-48, 767 P.2d 858, 863-64. We know of no authority--and none has been presented here--that this duty may be breached when a claimed exemption is *accepted*, rather than *rejected* by a county. *See Leach*, 234 Mont. at 442-43, 767 P.2d at 860-61 (concluding that county regulation that led to rejection of claimed exemption was contradictory to state law).

¶46 In arguing that such a duty exists, the Hamptons primarily rely on a 1983 Attorney General Opinion. *See* 40 Mont. Op. Atty. Gen. No. 16 (1983). That opinion held, however, that a local government *may* require a person claiming exemption from subdivision review to furnish evidence of entitlement to the claimed exemption. The opinion further stated that "[a] local government *may* legitimately require one claiming an exemption from the Act's requirements to make some evidentiary showing that the exemption is justified . . . ." (Emphasis added). Although not mentioned by either party, the foregoing Attorney General Opinion was in fact adopted by this Court in *State ex rel. Leach v. Visser*, to the extent it correctly expresses the authority afforded county commissioners

under the Act.

¶47 Here, the set of regulations adopted by the County (again not cited to or presented by either party) for implementing exemptions under §§ 76-3-201 and 207, MCA, provide that "[t]he criteria set forth herein, are to be used as *guidelines* for evaluation of such eligibility and are not in themselves *conclusive*. Further, said criteria do not presume that prior use of exemptions were unlawful." *See* Lewis and Clark County Subdivision Regulations, Appendix J, *Statement of Intent* (1999) (emphasis added).

¶48 The regulations provide that a person seeking exemption from the subdivision review requirements "shall apply for the exemption by furnishing evidence of entitlement to the claimed exemption to the Clerk and Recorder." Such evidence, however, "may include, but is not limited to, a certificate of survey, a completed and signed 'certificate of survey exemption affidavit,' and documentation of ownership." *See* Appendix J, at J-1 (1999). In turn, all that is affirmatively required of the County under its own regulations is that a committee "shall review" the "evidence submitted by the applicant." Following this review, the County must then execute written findings and notify the applicant in writing of the committee's determination. *See* Appendix J, at J-1 .

¶49 The Hamptons have not presented any authority establishing an affirmative duty on the County to analyze or investigate an exemption claimed under § 76-3-207(1), MCA, beyond the steps taken here--that is, to accept for review a certificate of survey or other evidence establishing the claimed exemption. The Hamptons have not presented any authority, for example, that the County *shall* conduct a hearing, or *shall* gather evidence above and beyond the certificate of survey, to test for any "evasion" of subdivision review where a property owner divides his or her land and claims an exemption under § 76-3-207 (1), MCA. Likewise, there is no indication here that any sort of defined threshold of evidence must be met in order for the County to accept a claimed exemption.

¶50 Finding no affirmative legal duty to the extent asserted by the Hamptons, we conclude that the District Court did not err in its determination that there are no material facts in dispute as to whether the County breached a duty to further investigate the Turners' claimed exemption pursuant to governing statutes and regulations, and therefore the County discharged any duty it owed in this instance as a matter of law.

¶51 Accordingly, having concluded that no material facts remain in dispute as to whether the division of land that created Parcel B was validly burdened by an agricultural-use-only

covenant, and whether the covenant was enforceable against the Hamptons, we hold that summary judgment in favor of the County was correct pursuant to our *de novo* standard of review.

¶52 This matter is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

1. The excerpted portion of Professor Natelson's article in the record--attached to the Hamptons' September 10, 1999 brief in opposition to summary judgment--ends at page 69.