DA 13-0054

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 237

DAVID G. ALLEN, ELEANOR M. ALLEN, JOHNATHON D. ALLEN,
AARON C. ALLEN, KRISTY D. ALLEN, DARREN J. CLARKE,
JAMES R. FRAME, ROXANNE M. FRAME, JOHN M. DAY,
BILL B. BLOMGREN, CHARLES E. HARRIS, JUDY K. HARRIS,
DENNIS THORNTON, DONNA THORNTON, JIM ETZLER,
BEVERLY E. ETZLER, CHRIS M. RASMUSSEN,
REMI C. RASMUSSEN, and JOYCE C. DAY,

        Plaintiffs and Appellants,

  v.

LAKESIDE NEIGHBORHOOD PLANNING COMMITTEE
and FLATHEAD COUNTY,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV- 09-843(C)
                Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Tammi E. Fisher, Noah H. Bodman; Fisher & Bodman, P.C.;
                Kalispell, Montana

                Richard DeJana; Richard DeJana & Associates, PLLC;
                Kalispell, Montana

        For Appellee:

                Paul J. Nicol, Caitlin Overland; Deputy Flathead County Attorneys;
                Kalispell, Montana

Submitted on Briefs:  July 10, 2013

Decided:  August 20, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      In December 2010, the Flathead County Commissioners approved and adopted a revised neighborhood plan prepared by the Lakeside Neighborhood Planning Committee. Numerous property owners in the Lakeside and Somers areas of Flathead County challenged the revised plan and now appeal the Eleventh Judicial District Court's rulings in favor of the Planning Committee and Flathead County.  We affirm.

## ISSUES

¶2      A restatement of the issues on appeal is:

¶3      Did the District Court err when it declined to void the 2010 Lakeside Neighborhood Plan and determined that no relief was available on Plaintiffs' claims regarding the destruction of public records and violations of Montana's open meeting laws?

¶4      Did the District Court err in determining a public meeting could not be held via a Yahoo email group?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5      In November 1995, the Flathead County Commissioners (Commissioners) adopted the original Lakeside Neighborhood Plan designed to address land use and growth in the Lakeside and Somers areas of Flathead County.  As recommended by this 1995 plan, the Lakeside Community Council was created as an advisory board to address community issues pertaining to neighborhood plan development.

¶6      In March 2007, Flathead County adopted the Flathead County Growth Policy (Policy or Growth Policy).  The Policy acknowledged the validity of existing

3

neighborhood plans and the possibility that some neighborhood plans would require revisions to comply with the newly-adopted Growth Policy. The Flathead County Planning Board (Board or Planning Board) determined the 1995 Lakeside Neighborhood Plan required revisions and the Board authorized the rewriting of the plan. Consequently, in or around October 2007, the Lakeside Community Council created the Lakeside Neighborhood Planning Committee (Committee or LNPC) to assist with the update of the earlier plan.

¶7 Beginning in October 2007 and throughout the first year of its existence, the LNPC worked on drafting a new plan or revising the old plan. The Committee held numerous meetings, most of which were held in private residences without adequate notice or invitation to the public. LNPC also created a password-protected, private Yahoo Group website for the exclusive use of LNPC members. A separate public website was created but it contained limited information and material. While members of the Planning Board were invited to closed meetings and given access to the members-only website, it was not until complaints about the lack of transparency in the proceedings began to arise that the Flathead County Attorney advised LNPC that it was subject to the "open meeting" laws and must hold public meetings in publicly-accessible places with proper notice. All LNPC meetings held after October 13, 2008, were properly noticed and held at the Lakeside Library.

¶8 In June 2009, numerous Lakeside property owners (a total of nineteen individuals referred to in this Opinion as Plaintiffs) filed a lawsuit against LNPC and Flathead County claiming LNPC had violated Montana's open meeting laws by conducting

4

Plan-related meetings in private and on a "secret" website. However, in May 2010 the parties stipulated to holding the cause of action in abeyance until the Commissioners either approved or rejected the recommended Plan.

¶9 The Planning Board ultimately approved the revised Lakeside Neighborhood Plan as submitted by LNPC in September 2010 (hereinafter the Plan or LNP) and forwarded it to the County Commissioners, who passed the resolution to adopt the Plan in December 2010. Upon adoption of the Plan, the complaint was revived in District Court and the action proceeded. In March 2011, the District Court enjoined the implementation of the Plan pending final outcome of the lawsuit. Plaintiffs subsequently filed an amended complaint and all parties later moved for summary judgment.

¶10 Multiple issues were raised for resolution by summary judgment but we address only those that are the subject of this appeal. Plaintiffs claimed LNPC was a public or governmental body that had violated Montana's right to know and open meeting laws by holding unannounced meetings in private homes or via a private Yahoo Group website. Plaintiffs also asserted LNPC had unlawfully destroyed public records by deleting files that had been posted to the Yahoo Group website prior to that website being closed in October 2008. They sought to have the Plan declared void as a result of these violations.

¶11 In November 2011, while acknowledging LNPC initially failed to fully comply with the open meeting laws, the District Court concluded that voiding earlier drafts of the Plan or voiding the final Plan were not appropriate remedies for the offenses. In conjunction with these rulings, the court also concluded that "meetings" as defined by

applicable statute could not be held on Yahoo Group. Plaintiffs appeal these specific rulings.

STANDARD OF REVIEW

¶12    We review the grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the trial court. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. Once the moving party has met its burden, the non-moving party must present substantial evidence essential to one or more elements of the case to raise a genuine issue of material fact. *Harris v. State*, 2013 MT 16, ¶ 11, 368 Mont. 276, 294 P.3d 382. (Internal citations omitted.)

DISCUSSION

¶13    *Did the District Court err when it declined to void the 2010 LNP and determined that no relief was available on Plaintiffs' claims regarding the destruction of public records and violations of Montana's open meeting laws?*

¶14    The District Court expressly determined that LNPC was a "public or governmental body" required to "make all its meetings open to the public" under Article II, Section 9 of the Montana Constitution and § 2-3-203, MCA.[1] The court then declared that "[t]he record contains undisputed evidence that the LNPC convened at least some meetings that were less than open in violation of Section 2-3-203(1), MCA." In determining whether voiding the Plan, as permitted under §§ 2-3-114 and -213, MCA, was the proper remedy for these violations, the court concluded that LNPC was not an "agency" (as defined in

---

[1] Unless otherwise noted, statutory references in this Opinion are to the 2007 MCA in effect at the time the challenged meetings were held.

6

§ 2-3-102, MCA) and therefore the "procedural irregularities" pertaining to LNPC's early meetings were "not decisions by an agency." Therefore, the District Court held that voiding the entire Plan based upon LNPC's early non-compliance with the open meeting laws was not an available remedy under the statutes.

¶15 In addition, the District Court noted that Plaintiffs' original complaint did not "challenge the County's decision adopting the revised . . . Plan," and the amended complaint did "not seek to void the . . . Plan"; therefore, the court reasoned, voiding the Plan "is not available based on the allegations in the pleadings and the undisputed evidence before the [c]ourt." The court further concluded that because revisions to LNPC's earliest Plan drafts occurred after LNPC opened the process to the public and took public comment, voiding early versions of the Plan would be an idle act.

¶16 Turning to Plaintiffs' destruction of public records claim, the District Court ruled that Plaintiffs' amended complaint did not request any specific relief for LNPC's alleged destruction of public records. The court expressly noted, however, that voiding the LNP was not an available remedy for this claim. Consequently, the District Court dismissed Plaintiffs' complaint as to this issue for failure to state a claim upon which relief could be granted.

¶17 On appeal, Plaintiffs argue that the District Court's ruling that voiding earlier versions of the Plan would be an "idle act" and that Plaintiffs' complaint "does not challenge the County's decision adopting the . . . [Plan]" are incorrect and should be reversed. Relying on the language in Article II, Sections 8 and 9 of the Montana Constitution, related statutes, and *Bryan v. Yellowstone Co. Elementary Sch. Dist. No. 2*,

7

2002 MT 264, 312 Mont. 257, 60 P.3d 381, Plaintiffs assert that their desired remedy of voiding the entire Plan is legally available and is the correct resolution.

¶18 Addressing the court's dismissal of their destruction of public records claim, Plaintiffs submit a confusing argument. They state in their opening brief on appeal that "while Plaintiffs maintain that their claims regarding the destruction of public records should not have been dismissed, the merits of that claim are not before the Court on this appeal." Notwithstanding this assertion, Plaintiffs ask that we reverse the District Court's ruling that their destruction of public records claim had no available remedy.

¶19 Defendants acknowledge that LNPC's earliest meetings were held in private homes without adequate notice to the public, but argue that upon learning in October 2008 that its meetings had to comply with the open meeting laws, LNPC immediately came into full compliance commencing in November 2008. Additionally, Defendants point out that LNPC, the Lakeside Community Council and the Planning Board conducted at least 50 Plan-related public meetings between November 2008 and the Commissioners' adoption of the LNP in December 2010—all of which satisfied the open meeting laws. Therefore, they assert that voiding early versions of the Plan and requiring LNPC to reconstruct what it had accomplished in the earlier closed meetings would indeed be an idle act which is unnecessary given that Plaintiffs had ample opportunity for over two years to participate in the process.

¶20 Addressing this Court's analysis in *Bryan*, Defendants argue that "the Montana Supreme Court recognized that a process flawed by lack of public participation can be corrected and the flawed result confirmed by proper process." In *Bryan*, the Yellowstone

8

County Elementary School District No. 2 (School District) concluded it had to close three elementary schools for budgetary reasons. *Bryan,* ¶ 1. During its deliberations to select which schools to close, the deciding committee relied upon a spreadsheet developed by a member of the committee that set forth information about several district schools to be considered for closure. *Bryan*, ¶ 9. In the meantime, the School District conducted a public forum and notified the general public of the School District's budget issues and potential solutions. Notably, the School District did not provide the public with the informational spreadsheet that contained ratings for each potentially affected school. *Bryan*, ¶¶ 11-12. Several days before the School District's final meeting announcing the closures, Lisa Schroeder, a parent of a child attending Rimrock Elementary School,[2] asked the School District's superintendent for a "head-to-head comparison" of the schools being considered for closure. She was told no such comparison existed. *Bryan*, ¶ 12.

¶21 The following day, however, Schroeder saw a televised interview with the committee member who prepared the spreadsheet in which the author was explaining the comparison method. Thereafter, Schroeder called the School District superintendent again and requested the spreadsheet. She was again told that the superintendent had no knowledge of the comparison document. *Bryan*, ¶ 13.

¶22 Four days later, the School District held its final meeting on school closures. During the public comment period of the meeting, Bryan and other parents urged the

---

[2] Several parents of Rimrock Elementary School students including Schroeder and Bryan united to rebut the school closure recommendation.

school board not to close Rimrock Elementary School. At the close of the public comment period of the meeting, the school board publicly reviewed and discussed the spreadsheet but again the spreadsheet was not distributed to the attending public. The school board subsequently selected three schools for closure, one of which was Rimrock Elementary School. Bryan and the other parents finally obtained the spreadsheet the day after the School District had announced its final decision. *Bryan*, ¶ 14.

¶23 Bryan filed a petition for a writ of prohibition to prevent the school closures. *Bryan*, ¶ 1. In our analysis, we concluded that Bryan's right to participate and her right to know as guaranteed by Article II, Sections 8 and 9, of the Montana Constitution had been violated. *Bryan*, ¶¶ 39 and 46. As a remedy, Bryan requested that the School District's decision to close certain schools be voided. *Bryan*, ¶ 48. We agreed and voided the School District's closure decision. *Bryan*, ¶ 52. However, we explained that we were not ordering the school district to re-open the closed schools; rather, we remanded the matter to the district court with instructions to allow Bryan another opportunity to rebut the closure recommendations based upon full disclosure and review of the spreadsheet. *Bryan*, ¶ 55.

¶24 *Bryan* stands for the proposition that voiding a decision by a public entity for failure to comply with open meeting laws may sometimes be an appropriate remedy. However, we conclude that because the case is significantly distinguishable on its facts, it does not dictate the appropriate remedy here. This is so for two reasons. First, the information set forth in the spreadsheet was hard data that was critical to the decision confronting the School District, such as comparable school capacities; per capita

10

expenditures for utilities; square footage; maintenance and repair costs; and other facts and figures not available in comparison form to the concerned public. Second, the immediacy of the violation in *Bryan* was a decisive factor. Though the school board decision was imminent, the public was kept in the dark about the very information upon which the school board would rely in making its closure decision. The parents were therefore clearly deprived of their right to know and right to participate in the school board's decision.

¶25 By contrast, Plaintiffs here were deprived of information generated during the early exchanges among the members of LNPC. This information was not hard data, but rather consisted of discussions and ongoing analysis of possible plan revisions. Once the meetings were opened, the Lakeside residents had the right to participate in the Committee meetings, Council meetings, Board meetings, and the drafting process, and had access to the information relied upon by these drafting and reviewing entities for approximately two years before the Commissioners issued their final ruling. Unlike the parents in *Bryan*, the Lakeside residents had available to them all information under consideration, and plenty of time to digest the material and propose revisions. Thus, the situation here is radically different than that before the Court in *Bryan*.

¶26 We next consider whether the Plaintiffs have adequately stated a cause of action against the Flathead County Commissioners. As noted above, Plaintiffs dispute the District Court's finding that the complaint did not challenge any agency decision. Plaintiffs argue that such a finding "ignores the plain language of the Complaint and entirely ignores the history of the case." They concede that the original complaint did not

challenge any decision by the County Commissioners because at the time the complaint was filed, there was no agency decision to challenge. Plaintiffs submit, however, that because the matter was held in abeyance and then revived when the Commissioners adopted the Plan, to conclude that Plaintiffs were not challenging the Commissioners' decision would be an "absurd and unreasonable result." They further claim that both the original complaint and the amended complaint expressly requested that the District Court void the LNP for non-compliance with the open meeting laws and "[d]eclare the draft [LNP] illegal and unconstitutional and therefore of no force and effect."

¶27 While the complaint and amended complaint do contain the language quoted above, Plaintiffs did not assert in the District Court nor have they alleged on appeal any error or open meeting law violations on the part of the County Commissioners. They name Flathead County as a defendant, but do not argue that the County itself has done anything wrong. The County Commissioners had no involvement in the drafting work done by LNPC, nor has it been demonstrated that they had any participation in the early non-public meetings conducted by LNPC. It is therefore difficult to conclude that Plaintiffs have effectively challenged the ultimate decision made by the County Commissioners.

¶28 Moreover, while the applicable statutes require that counties consider the advice offered by city-county planning boards, counties are not bound to accept their recommendations. In *Common Cause of Montana v. Statutory Comm. to Nominate Candidates for Com'r of Political Practices*, 263 Mont. 324, 868 P.2d 604 (1994), a statutory committee was put in place to create a list of possible candidates for the office

12

of Commissioner of Political Practices. The Committee held a private meeting to discuss potential candidates and later submitted a list to then-Governor Stan Stephens. Governor Stephens selected one of the listed candidates who was later confirmed by the Senate and sworn into office. In the meantime, Common Cause challenged the Governor's selection and sought to have the appointment voided on the grounds the Committee had violated the open meeting laws. *Common Cause*, 263 Mont. at 326-27, 868 P.2d at 606. After concluding that the Committee was required to conduct open meetings and that the private meeting should have been publicly announced, we addressed the remedy sought by Common Cause. *Common Cause*, 263 Mont. at 330-32, 868 P.2d at 607-09.

¶29 Relying on § 13-37-102, MCA (1993), which provides that a governor may "consider" names presented to him by the Committee, we observed "[t]he language [in the statute] 'for his consideration' illustrates the advisory role of the Committee." *Common Cause*, 263 Mont. 332-33, 868 P.2d 609. We declined to void the Governor's decision because the Governor was "free to disregard entirely the list of names submitted by the Committee." *Common Cause*, 263 Mont. at 333, 868 P.2d at 609. Consequently, there was no direct legal nexus between the Committee's recommendations and the Governor's appointment. As such, the action by the Governor was not tainted by the Committee's failure to comply with the open meetings laws.

¶30 In the case before us, § 76-1-603, MCA, provides that, after the requisite public hearing on a growth policy, the Planning Board must "consider" the recommendations and suggestions elicited at the public hearing. The Planning Board must then (1) recommend adoption of the proposed policy to the appropriate governing body—in this

13

case the County Commissioners, (2) recommend that the policy not be adopted, or (3) recommend that the governing body take some other action. Section 76-1-604, MCA, requires the appropriate governing body to adopt, adopt with revisions, or reject the proposed growth policy. Notably, these statutes were followed here. Just as the Planning Board could have rejected LNPC's proposed Plan, the Commissioners could have rejected the Board's recommendation. Therefore, under the circumstances of this case and for the same reasons adopted in *Common Cause*, we agree with the District Court that voiding the Commissioners' adoption of the LNP is not an appropriate remedy.

¶31 Lastly, we conclude the District Court did not err in concluding that LNPC was not an "agency" whose decisions could be voided under §§ 2-3-114 and -213, MCA. An "agency" is defined, with certain inapplicable exceptions, as "any board, bureau, commission, department, authority, or officer of the state or local government authorized by law to make rules, determine contested cases, or enter into contracts . . . ." Section 2-3-102(1), MCA. Section 2-3-114, MCA, provides that "the district courts of the state have jurisdiction to set aside an agency decision . . . ." and § 2-3-213, MCA, states "Any decision made in violation of 2-3-203 may be declared void by a district court having jurisdiction. A suit to void a decision must be commenced within 30 days of the date on which the plaintiff or petitioner learns, or reasonably should have learned, of *the agency's decision*." (Emphasis added.) These statutes clearly and expressly state that an agency decision reached in violation of the open meeting laws may be voided. The LNPC is not an agency but rather is an advisory committee. Consequently, while the open meeting

14

laws apply to its proceedings, the statutes pertaining to the voiding of agency decisions have no application to the LNPC.

¶32 We in no way condone LNPC's early violation of the applicable open meeting laws. However, once LNPC learned it was in possible violation of the law, it immediately took steps to correctly and publicly notice its meetings and provide the public with access to all of its discussions and planning. The public was able to participate in dozens of ensuing meetings and discussions before the County Commissioners finally approved and adopted the Plan. Therefore, we conclude that vacating the revised neighborhood plan and reinstituting the entire lengthy drafting process is not an appropriate remedy.

¶33 Finally, as noted in ¶ 18, because Plaintiffs assert in their opening brief on appeal that the merits of their destruction of public records claim are not before this Court on appeal, we decline to further address this issue.

¶34 *Did the District Court err in determining a public meeting could not be held via a Yahoo email group?*

¶35 Citing § 2-3-202, MCA, the District Court stated that "with respect to the Yahoo Group, a 'meeting' is the convening of a quorum of the constituent membership of a public or governmental body to hear, discuss or act upon a matter over which that entity has supervision, control, jurisdiction or advisory power." The court observed that the record contained undisputed evidence that a quorum did not and could not convene on the Yahoo Group. The District Court noted that during the time LNPC used the Yahoo Group, it did not have online chat capability. Additionally, the System and Network

Administrator for Flathead County's Information Technology Department testified by affidavit, that "it is impossible to hold a meeting on the Yahoo Work Group [because it] was not designed for this purpose and could not be used as an alternative to holding an actual meeting." The court acknowledged that § 2-3-202, MCA, requires that "meetings" convened by electronic equipment must comply with open meeting laws but ruled that no evidence was presented that a quorum of LNPC members could actually convene on the Yahoo Group "such that a meeting . . . would have been possible."

¶36 We affirm the District Court's ruling based upon the lack of evidence that such an electronic meeting occurred in this case. However, given the constantly evolving technology, we decline to state that a "meeting" could never be convened by way of a Yahoo email group. We therefore caution public officers that conducting official business via email can potentially expose them to claims of violation of open meeting laws.

## CONCLUSION

¶37 For the foregoing reasons, we affirm the District Court's rulings in favor of LNPC and Flathead County.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE

16