JUSTICE McKINNON
dissents.
¶52 The Court affirms a flawed judicial resolution of matters rightly within the discretion of local government. I believe the District Court erred by finding on summary judgment that the agricultural covenant had been revoked, and compounded that error by failing to recognize the existence of the covenant as the dispositive issue in this litigation. Had the District Court properly resolved this issue in the first instance, it would not later have been forced to address such matters as the need for public access easements or the road width necessary to ensure emergency vehicle access. These matters are within the province of local government, and neither the District Court nor this Court should invade that province by effectively granting variances from County regulations. Nevertheless, that is exactly the outcome reached today. Accordingly, I dissent.
¶53 I begin by noting that the County’s pleadings sought only enforcement of the covenant. Although the District Court regarded the issue of whether the agricultural covenant remained in effect as “a distinction without a difference,” the existence of an agricultural *151 covenant makes a significant difference to the County’s enforcement powers. A “Certificate of Facts Exempting Division of Land for Agricultural Purpose from Review as a Subdivision,” filed with the Certificate of Survey in 1993, specifically states that the governing body of Lewis and Clark County “is deemed to be a party to and may enforce this covenant.” Hampton v. Lewis & Clark Cnty., 2001 MT 81, ¶ 6, 305 Mont. 103, 23 P.3d 908. If the covenant remains in effect, the County can enforce it. If the covenant no longer exists, there is nothing for the County to enforce. Although the litigation has proceeded — for more than five years now — under the assumption the County can require Hampton to perform the conditions after revocation of the covenant, neither party has identified any legal authority allowing the County to do so. The Court persists in this error, acknowledging Hampton’s “violations,” Opinion, ¶ 50, but failing to identify what, as a matter of law, has been violated.
¶54 Although the County’s pleadings sought enforcement of the covenant, the County also referenced the Montana Subdivision and Platting Act. Sections 76-3-101 to -625, MCA. Thus, after finding on summary judgment that the covenant had been revoked, the District Court issued a pretrial order reframing the central question as whether Hampton had evaded subdivision review under the MSPA. Even if he had, the MSPA does not provide the remedy fashioned by the District Court in this case. A developer who fails to comply with the requirements of subdivision review will simply not be granted final plat approval. Section 76-3-611, MCA. Without final plat approval, a developer is prohibited from selling, leasing, or transferring the property and may be charged with a misdemeanor for doing so. Section 76-3-105, MCA. The County has not filed misdemeanor charges against Hampton. The MSPA contemplates no other remedy. See Opinion, 149.
¶55 That is not to say the MSPA has no bearing on the present case. The provisions of the MSPA must be considered in concert with the effect of the agricultural covenant. With respect to agricultural covenants, the MSPA provides as follows: “a change in use of the land exempted under subsection (l)(c) for anything other than agricultural purposes subjects the division to review under parts 5 and 6 of this chapter.” Section 76-3-207(2)(b), MCA. This Court has not previously considered this provision, and I believe it should do so today. In order for this provision to have any effect, the agricultural covenant must remain in place until the subdivision review process has been completed. *152 ¶56 When a subdivision is exempted from review pursuant to an agricultural covenant, the covenant is to be noted on the plat itself or in an instrument recorded with the plat. Section 76-3-306, MCA. If the covenant is revoked, the MSPA does not require the property to be conveyed to the original owner and joined with the parcel from which it was originally divided. See § 76-3-207(2)(b), MCA. This would be an impractical requirement. As a matter of common sense, when an agricultural covenant is revoked, the plat reflecting the subdivision remains of record. A plat may not be recorded unless the governing body has granted its final approval. Section 76-3-301(1), MCA. Thus, when an agricultural covenant is removed from a recorded plat, the status of the plat is the same as if it had been through subdivision review and earned final approval.
¶57 After final approval of a subdivision, the governing body has no power to enforce conditions or require improvements other than through a subdivision improvement agreement secured by a bond. Section 76-3-507, MCA. A governing body has no power to revoke an agricultural covenant or grant final plat approval and then require a developer to comply with subdivision regulations after the fact. Subdivision review must therefore take place prior to revocation of an agricultural covenant.
¶58 Hampton’s request for revocation of the agricultural covenant initiated review of the division of land that resulted in creation of the covenant in 1993. Section 76-3-207(2)(b), MCA. Review begins with submission of a subdivision application and preliminary plat containing detailed information, including preliminary water and sanitation information. Sections 76-3-601, -622, MCA.
¶59 After submission of a complete subdivision application, the governing body may approve, conditionally approve, or deny the application. Section 76-3-604, MCA. Conditional approval is vahd for at least one year, during which time the governing body may not impose additional conditions. Section 76-3-610, MCA. The developer must complete the required improvements prior to approval of the final plat. Section 76-3-507(1), MCA. Alternatively, the developer may provide a bond securing the construction of required improvements within a period specified by the governing body. Section 76-3-507(2), MCA. Where an agricultural covenant is in place, construction of improvements is not appropriate. A subdivision improvement agreement secured by a bond ensures that the necessary improvements will be made after the agricultural restriction is lifted. During the conditional approval period, the developer can take steps that do not *153 require physical construction, such as securing easements from neighboring property owners.
¶60 The governing body can grant final approval of a subdivision plat only when all requirements of the conditional approved have been met or a subdivision improvement agreement is in place. Sections 76-3-507, -611, MCA. In the context of a property subject to agricultural covenant, if the developer is unable to demonstrate that the requirements of the conditional approval can be met, the covenant should remain in effect and the property revert to agricultural use. Whether the agricultural covenant remained in effect is therefore not “a distinction without a difference,” but instead should have been the dispositive issue in this protracted litigation.
¶61 The evidence presented to the District Court at the summary judgment stage shows that the County did not intend to revoke the agricultural covenant until after Hampton had satisfied the thirteen conditions placed on the revocation. At the September 9,2004 meeting of the Board of Commissioners, Planning Department director Sharon Haugen advised the commissioners that her staff would “recommendÜ two conditions upon the approval of the revocation of [the] agricultural covenant...” The commissioners then asked deputy county attorney K. Paul Stahl to address “conditioning the revocation of the agricultural covenant.” Stahl indicated “[t]he commission may condition lifting of the covenant if they deem fit... . The commission would view the parcel, upon lifting of the agricultural covenant, as it was when it was originally created by process of subdivision and would then place conditions on the 12 acre parcel.” These statements are largely consistent with the process of conditional approval of a subdivision application. Moreover, to the extent that Hampton relies on these statements to support the position that the County intended to revoke the covenant before the conditions were satisfied, it is important to note that these preliminary deliberations should not be construed as conclusive evidence of the commission’s final action. The commission did not take final action until two weeks later, and was not bound to accept the recommendations made at this meeting. See Allen v. Lakeside Neighborhood Planning Comm., 2013 MT 237, ¶ 28, 371 Mont. 310, 308 P.3d 956.
¶62 A memorandum to the commission dated September 21, 2004 indicates that additional legal consultation took place after the September 9, 2004 meeting. At the September 23, 2004 meeting, the commissioners voted “to approve the revocation subject to 13 conditions.” Following that meeting, the commission issued findings of *154 fact and conclusions of law, which read as follows:
Based on the above findings and conclusions, the Commission voted 3-0 to revoke the Agricultural Covenant [on the Hampton parcel] subject to the following:
CONDITIONS FOR THE LIFTING OF THE HAMPTON AGRICULTURAL COVENANT
Any and all development [on the Hampton parcel] is subject to the following conditions:
Prior to any development, Mr. Hampton and his successors must submit their proposed development to the Lewis and Clark Planning Department for its written approval. Approval will be granted only upon a determination by the planning department that the following conditions have been met....
The “subject to” language iised by the County is commonly used when referring to conditional approval of a subdivision application. See e.g. Broadwater Dev. L.L.C. v. Nelson, 2009 MT 317, ¶ 4, 352 Mont. 401, 219 P.3d 492 (“The preliminaiy approval was subject to 25 conditions that had to be met before the subdivision could receive final approval.”); Kiely Constr. L.L.C. v. City of Red Lodge, 2002 MT 241, ¶ 2, 312 Mont. 52, 57 P.3d 836 (“Red Lodge conditionally approved Kiely’s application, subject to [26] conditions.”).
¶63 A letter dated September 24, 2004, addressed to Hampton from the chairman of the Board of Commissioners, reads in part: “Please work closely with the County Planning Department as you proceed with the fulfillment of the conditions placed on the revocation. Once all the conditions of this preliminary approval have been met, the Agricultural Covenant can be lifted.” Furthermore, it was undisputed at the summary judgment hearing that the agricultural covenant was never removed from the land records, a fact given almost no significance by either this Court or the District Court. The Court acknowledges that the purpose of recordation is “to prohibit further development until the developer has complied with the conditions.” Opinion, ¶ 28. The Court does not explain why it finds this rule inapplicable to Hampton, other than to say that the County’s “consent to revoke the covenant” cannot be read to mean “nothing.” Opinion, ¶ 28. To that extent, I agree. The County’s actions can, and must, be read as granting conditional approval of Hampton’s request for revocation, with final approval to be given upon completion of the conditions. Conditional approval does not mean “nothing.” The County’s conditional approval was a significant benefit to Hampton, as it notified him of the requirements for final approval, provided him a *155 reasonable period of time to complete those requirements, and ensured that the County could not impose new requirements during that time. Section 76-3-610, MCA.
¶64 The evidence clearly shows that the commission intended to require completion of the conditions prior to revoking the agricultural covenant. The County was therefore entitled to judgment in its favor. The Court disagrees, claiming. the County “did not request a declaration that the property remain under an agricultural covenant.” Opinion, ¶ 50. The record demonstrates otherwise. In its response to Hampton’s motion for summary judgment on the issue of the agricultural covenant, the County twice claimed it was entitled to judgment as a matter of law. The County concluded by “askting] the Court to grant summary judgment in favor of the County based on the undisputed facts in this case.” At the hearing on the motion, the County repeated its request for the District Court to find that the agricultural covenant remained in place and accordingly enter judgment in favor of the County. The Court’s refusal to “consider arguments the County did not make,” Opinion, ¶ 50, ignores the fact that the County argued vociferously for enforcement of the agricultural covenant from the time it filed its complaint. The County’s request for enforcement of the covenant implicitly required a determination that the covenant could be enforced.
¶65 If the District Court had properly resolved the summary judgment issue and recognized the significance of the agricultural covenant, it would not have been necessary to litigate whether Hampton had notice of the conditions and which conditions had been satisfied. The recorded agricultural covenant would have imparted constructive notice that the property was unsuitable for development. Earl v. Pavex Corp., 2013 MT 343, ¶ 17, 372 Mont. 476, 313 P.3d 154 (citingNrier v. Creative Fin. & Invs., 2009 MT 36, ¶ 21, 349 Mont. 207, 203 P.3d 744). Any non-agricultural use of the property would have been a violation. There would have been no role for a judge or jury in assessing the relative completion or necessity of the conditions imposed by the County.
, ¶66 Instead, the District Court asked a jury to sit in the place of the Planning Department and determine whether Hampton had developed his property in accordance with the County’s requirements. The District Court itself then evaluated the conditions Hampton had failed to meet, determining there was “no legitimate reason to require a public access easement,” and requiring Hampton to improve the roads providing access to his property only “within the access easement(s) set out on the property deeds,” which the neighboring property owners *156 claim are too narrow to allow access by emergency services. Essentially, the District Court stepped into the shoes of the County and granted a variance from subdivision regulations on its behalf. The Cotut, affirming this resolution, concludes the outcome “ensures needed emergency access,” but fails to explain how — because it does not. Opinion, ¶ 40. It was both unnecessary and inappropriate for the District Court to make such planning judgments on behalf of the County, and this Court should not allow that result to stand.
¶67 The Court asserts the District Court granted the relief sought in the County’s complaint when it “determined the appropriate manner to require satisfaction of the T3 conditions of approval.’ ” Opinion, ¶ 50. The County’s request for this relief reflected its continued willingness to revoke the agricultural covenant if the property could be made suitable for residential development. In the judgment of the Board of Commissioners, satisfaction of all thirteen conditions was necessary to mitigate the effects of development and allow removal of the agricultural covenant. If this could not be accomplished, the County sought alternative relief including removal of the residence, a permanent injunction prohibiting residential use of the property, or an appropriate monetary penalty. The District Court ordered only partial completion of the conditions, a result which neither makes the property suitable for residential use nor restores it to agricultural use.
¶68 I would reverse and grant summary judgment to the County on the issue of whether the agricultural covenant had been revoked. I would then remand to the District Court solely to determine the appropriate remedy for Hampton’s violation of the agricultural covenant.