

DA 13-0420

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 207

LEWIS AND CLARK COUNTY,

      Petitioner and Appellant,

  v.

GREG L. HAMPTON,

      Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2009-526
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Leo J. Gallagher, County Attorney, Katie Jerstad, K. Paul Stahl, Deputy
County Attorneys, Helena, Montana

      For Appellee:

          David K. W. Wilson, Jr., Robert Farris-Olsen, Morrison, Sherwood, Wilson
& Deola PLLP, Helena, Montana

Submitted on Briefs:  April 2, 2014
Decided:  August 5, 2014

Filed:

_____
Clerk

Justice Beth Baker delivers the Opinion of the Court.

¶1 Lewis and Clark County appeals the judgment of the First Judicial District Court following a jury trial, along with the court's previous orders granting Greg Hampton partial summary judgment and denying the County's motion for summary judgment.

¶2 We address the following issues on appeal:

¶3 *1. Whether the District Court erred in ruling on summary judgment that the County consented to revocation of an agricultural covenant on Hampton's property.*

¶4 *2. Whether the District Court erred in denying summary judgment to the County and allowing a jury to decide whether Hampton had notice of and failed to complete the conditions attached to the County's revocation.*

¶5 *3. Whether the District Court erred in its entry of final judgment.*

¶6 We affirm the District Court's decisions on the cross-motions for summary judgment and affirm its judgment in part. We remand for modification of the final judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

¶7 This action arises from a restriction placed on a parcel of real property located in the South Hills of Helena. Hampton, a developer, divided a forty-acre parcel into at least a dozen lots utilizing various exemptions allowed by the Montana Subdivision and Platting Act (Act). Hampton conveyed an approximately 14.2-acre parcel to John and Carol Turner. The Turners retained, and later sold, 1.9 acres for residential purposes. In an attempt to avoid the subdivision review process, they placed an agricultural covenant on the remaining 12.3 acres in 1993. This covenant stated that the land would be used exclusively for agricultural purposes. It ran with the land and allowed revocation only by "mutual consent of the owners of the parcel . . . and the governing body of Lewis and Clark County." The

2

Turners previously had agreed to reconvey the restricted 12.3-acre parcel to Hampton and did so in 1996. At that time, Hampton requested the County's consent to lift the covenant. The County denied his request. In 1997, Hampton again requested lifting the covenant and the County again denied the request. In 1998, Hampton filed an action for declaratory relief, requesting that the court declare the covenant void and unenforceable. We affirmed the district court's determination that the covenant was not void. *Hampton v. Lewis & Clark Co.*, 2001 MT 81, 305 Mont. 103, 23 P.3d 908.

¶8 In July 2004, Hampton again requested the County's consent to revoke the agricultural covenant. At a regularly scheduled public meeting, the County Commission decided to hear the request and scheduled a public hearing for September 9, 2004.

¶9 At the public hearing, the Commission heard a presentation from its staff about the parcel and the agricultural covenant policy. The County Planning Director recommended denial of Hampton's request to lift the covenant based on his past misuse of the Act's exemptions. The Commission deliberated and requested input about how it might conditionally approve Hampton's request. Prior to the next meeting, County staff circulated a memo outlining fifteen conditions of approval if the Commission chose to lift the agricultural covenant. A revised memo listed thirteen conditions. The conditions mirrored those required of other minor subdivisions in the South Hills and were designed to bring Hampton's property into compliance with applicable laws and regulations by mitigating impacts or eliminating hazards resulting from subdivision of the property. Two conditions of particular importance involved access to the parcel. The Act requires that approved subdivisions have both legal and physical access. Section 76-3-608(3)(d), MCA.

3

¶10 At the September 23, 2004 meeting, the Commission voted on the "Revocation of Agricultural Covenant." The minutes from the meeting reflect that "[t]he motion to approve the revocation subject to 13 conditions as amended carried unanimously."

¶11 Of the thirteen conditions, the following are at issue in the litigation:

5. A plan to improve Lodgepole and/or Sweetgrass Road to the specification required by the County Subdivision Regulations . . . from the west edge of the proposal to the intersection with Lime Kiln Road . . . submitted to the County Planning Department . . . ;
6. Evidence that Lodgepole and/or Sweetgrass Roads are public access easements . . . submitted to the County Planning Department for review and approval;
7. An Approach Permit . . . granted by the County Road Department . . . ;

. . .

11. A Certificate of Survey . . . submitted to the Planning Department for review and approval.

¶12 The County sent Hampton a letter approving the lifting of the covenant subject to the thirteen conditions. The letter stated, "Prior to any development, Mr. Hampton and his successors must submit their proposed development to the Lewis and Clark Planning Department for its written approval. Approval will be granted only upon a determination by the planning department that the . . . conditions have been met[.]"

¶13 Shortly after the County's action, Hampton began working on developing his residence. The parcel is located on Sweetgrass Road, which is a dead-end accessible from Lodgepole Road. He submitted a comprehensive permitting application to the County Office of the Permit Coordinator for a "new home—building on parcel." In December 2004, Hampton submitted a Montana Department of Environmental Quality/Local Government Joint Application Form for the "Greg Hampton Homesite." On April 14, 2005, the Montana

4

Department of Environmental Quality sent Hampton a letter approving his proposed development for "water supply, sewage, solid waste disposal, and storm water drainage." The letter indicates that a copy was sent to the County Planning Board. In April 2005, Hampton received his address assignment from the County. Soon afterward, the County granted approval for Hampton's septic drainfield. Hampton's tax classification changed from agricultural to residential in 2005. His property taxes reflected the change—rising from $150 to approximately $5,000 per year. The 2006 County tax records include a photo of Hampton's residence and his address.

¶14 In September 2006, Josh Chisholm, a developer, applied to subdivide Hampton's parcel. As the property owner, Hampton also signed the application. In the process of reviewing Chisholm's application, the County realized that Hampton may not have completed the conditions placed upon him in 2004. On January 5, 2007, the County sent a letter to Chisholm rejecting the application and stating that the parcel was "subject to an agricultural covenant." The County Planner who discovered this testified at trial that although a survey had lifted the agricultural covenant, there was no evidence that the conditions had been completed.

¶15 On January 16, 2008, the County sent a letter to Hampton informing him that it had not received any verification that all of the conditions had been met. The letter gave Hampton ten days to complete and verify with the County that all of the conditions were satisfied. Hampton spoke with the County's Director of Community Development and Planning, Kelly Blake, on January 22, 2008. Hampton informed her that he was unable to comply with Conditions Five and Six to make the road public as he had not obtained the

neighboring property owners' approval. Blake forwarded the matter to the County Attorney's Office for enforcement.

¶16 On June 10, 2009, the County filed a complaint in the District Court requesting injunctive relief and an order requiring Hampton to complete the conditions. The County's amended complaint, filed a year later, requested the following relief:

1. Order one of the following alternatives:
    a. Order Hampton to satisfy all 13 conditions of approval within a reasonable amount of time;
    b. Order Hampton to remove the residential dwelling on his property;
    c. Permanently enjoin Hampton and any present or future owners of the property from using the property for residential purposes, including the use of the residential dwelling currently on the property;
    d. Order Hampton to pay to County an appropriate monetary penalty to be established at trial;
2. Order Hampton to pay County's costs and attorney's fees in this matter; and
3. Order such other and further relief as the Court deems proper and just.

¶17 Hampton moved for summary judgment on numerous issues, including whether the agricultural covenant had been revoked. Prior to a ruling on Hampton's motion, the County moved for summary judgment on the issues whether Hampton had notice of the conditions and whether he failed to meet all of the conditions prior to development.

¶18 On November 16, 2011, the court granted partial summary judgment to Hampton, ruling that the County had agreed to lift the agricultural covenant. Then, on February 1, 2012, the court denied the County's motion for summary judgment because there was "substantial disagreement about the status of the conditions."

¶19 A four-day jury trial began April 2, 2012. The two issues were whether Hampton had notice of the thirteen conditions prior to building his home and which conditions, if any, remained unmet. The jury determined that Hampton did have notice and that he failed to complete four conditions (Five, Six, Seven, and Eleven) prior to development.

¶20 Following trial, the County moved for final judgment pursuant to M. R. Civ. P. 54(c), along with costs and attorney's fees. The District Court issued its memorandum and order on post-trial issues and judgment on April 23, 2013. The court ordered Hampton to comply with Conditions Five and Six by paying the proportional share of the cost to upgrade Lodgepole Road to County road requirements and to pay the entire cost of upgrading Sweetgrass Road. The court ordered the County to issue the approach permit required under Condition Seven and to accept and file the certificate of survey for compliance with Condition Eleven. The court also ordered Hampton to file an irrevocable deed restriction prohibiting further development or division of his property. The County does not separately challenge on appeal the District Court's order as to Conditions Seven and Eleven, but argues error in its resolution of Conditions Five and Six.

¶21 On June 17, 2013, other landowners along Sweetgrass Road filed a motion to intervene. They argued that the court's order violated their property rights by requiring Hampton to upgrade Sweetgrass Road. The District Court denied the landowners' motion to intervene as untimely and clarified that its ruling "is confined to improvement of Sweetgrass Road within the access easement(s) set out on the property deeds." The landowners do not appeal this determination, nor is this post-judgment intervention request an issue on appeal. The District Court stayed its judgment pending appeal.

7

## STANDARD OF REVIEW

¶22    We review a district court's summary judgment ruling de novo, applying the same criteria as does a district court under M. R. Civ. P. 56. *Empire Office Machs., Inc. v. Aspen Trails Assocs. LLC*, 2014 MT 94, ¶ 9, 374 Mont. 421, 322 P.3d 424. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

¶23    We review a district court's findings for clear error. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court has misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that a mistake has been made. *Lewis & Clark Co. v. Schroeder*, 2014 MT 106, ¶ 12, 374 Mont. 477, 323 P.3d 207. We review the trial court's conclusions of law for correctness. *Schroeder*, ¶ 12. Whether there is legal authority for an award of attorney's fees is a conclusion of law that we review to determine whether the court interpreted the law correctly. *Braach v. Graybeal*, 1999 MT 234, ¶ 6, 296 Mont. 138, 988 P.2d 761.

## DISCUSSION

¶24    *1. Whether the District Court erred in ruling on summary judgment that the County consented to revocation of an agricultural covenant on Hampton's property.*

¶25    The County argues that the District Court erred in partially granting Hampton's summary judgment motion because Hampton failed to meet the conditions for revocation. Hampton responds that the Commission voted to lift the agricultural covenant and imposed conditions to be completed prior to development. The District Court concluded that "the

8

most reasonable interpretation of the whole of the record evidences an intent to revoke the agricultural covenant and impose conditions to be met prior to development." The court further stated, "As a practical matter, it is a distinction without a difference—no development could occur without fulfillment of the conditions whether or not the agricultural covenant was revoked."

¶26 Section 76-3-207(1)(c), MCA, allows revocation of an agricultural covenant only "by mutual consent of the governing body and the property owner." In the County's internal memorandum, the thirteen conditions were preceded by the following introduction: "Prior to any development, Mr. Hampton and his successors must submit their proposed development to the Lewis and Clark Planning Department for its written approval. Approval will be granted only upon a determination by the planning department that the following conditions have been met." The minutes from the September 23, 2004 meeting reflect that the Commission voted to "approve the revocation subject to 13 conditions of approval . . . ." The letter sent to Hampton following the Commission's vote begins by stating that "the Commissioners convened to make a decision on the request [to revoke the agricultural covenant]. The attached statement . . . outlines the basis of the Commissioners' decision to approve your request for revocation." One given reason was that "[t]he parcel of land is not appropriate for agricultural use." The County's letter makes clear, however, that the land also was not appropriate for development without the fulfillment of the conditions. We agree with the District Court that this evidence demonstrates the County's intent to revoke the covenant while imposing conditions to be completed prior to development.

9

¶27     The County argues that because there is not a revocation recorded for the parcel, the agricultural covenant still is in effect. It relies on County Resolution 1986-55, which requires the revocation of an agricultural covenant to be recorded before the revocation "shall be effective." The County argues that the "difference" the District Court failed to appreciate is that once the covenant is removed from the title in the clerk and recorder's office, the County no longer has authority to require Hampton to complete the conditions. In arguing its motion for summary judgment before the District Court, the County urged that the conditions have to be completed prior to the removal of the agricultural covenant in the records of the county clerk and recorder's office.

¶28     Section 76-3-207(1)(c), MCA, requires "mutual consent" to revoke a covenant. Revocation under the statute is effective between the applicant and the County upon mutual consent. As the County discusses, the purpose of recordation is to put third parties on notice of the restriction and to prohibit further development until the developer has complied with the conditions. While the language of the resolution prohibits Hampton from clearing the agricultural covenant from the property's title for the purpose of further development or sale, it cannot be read to mean that the County's consent to revoke the covenant means nothing. Accordingly, we conclude that the District Court did not err in granting Hampton's summary judgment motion on this issue.

¶29     *2. Whether the District Court erred in denying summary judgment to the County and allowing a jury to decide whether Hampton had notice of and failed to complete the conditions attached to the County's revocation.*

¶30     The County next disputes the District Court's order denying the County's motion for summary judgment. Hampton responds that this issue has been rendered moot by the jury

10

verdict. The County moved for summary judgment declaring that Hampton had notice of and failed to complete the conditions. Following the court's denial of summary judgment, the jury concluded that Hampton did have notice and that he failed to meet four conditions.

¶31 An appeal of a final judgment includes appeal of "all previous orders and rulings excepted or objected to which led to and resulted in the judgment." M. R. App. P. 6(1). Nevertheless, only an "aggrieved party" may appeal from a final order. M. R. App. P. 6(3). We do not decide moot issues. *Houden v. Todd*, 2014 MT 113, ¶ 27, 375 Mont. 1, 324 P.3d 1157. An issue is moot if a court is no longer able to grant effective relief. *Houden*, ¶ 24.

¶32 The County characterizes Hampton's mootness argument to mean that a party can never appeal from a district court's denial of summary judgment, and it cites cases involving the appeal of summary judgment denials. These cases are inapplicable, as they involve an appeal of a final judgment contrary to the appealing party's position at the summary judgment stage. *See Harrell v. Farmers Educ. Coop. Union*, 2013 MT 367, ¶¶ 26-43, 373 Mont. 92, 314 P.2d 920; *Earl v. Pavex, Corp.*, 2013 MT 343, ¶ 36, 372 Mont. 476, 313 P.3d 154; *Lane v. Mont. Fourth Jud. Dist. Ct.*, 2003 MT 130, ¶ 37, 316 Mont. 55, 68 P.3d 819. The County is not an aggrieved party because the jury verdict granted the County the outcome it sought in its motion for summary judgment. Even if there was error in denying the County's motion for summary judgment, there would be no change in the relief sought by or available to the County. As such, whether the court improperly denied the County's motion for summary judgment is moot.

¶33 *3. Whether the District Court erred in its entry of final judgment.*

11

¶34 Following the trial, the County sought entry of judgment pursuant to Rule 54(c). The remaining issues were whether Hampton could fulfill the four outstanding conditions and what remedies or sanctions should be imposed for his failure to comply with the conditions prior to development. The court held a hearing regarding these issues on November 28, 2012. Following the hearing, it ordered post-trial briefing, which was completed on December 31, 2012. The court entered its judgment on April 23, 2013.

¶35 The County posits three errors in the Court's final judgment: First, its determination that Lodgepole Road is public and that Sweetgrass Road did not need to be made public; second, its determination that Hampton was only responsible for his proportional share of improvement costs for Lodgepole Road; and third, its failure to order the County's requested relief.

  *a. Public access on Lodgepole and Sweetgrass Roads*

¶36 Condition Six requires Hampton to demonstrate to the County that Lodgepole and Sweetgrass roads are public roads. The court found that "[t]he first 671 feet of Lodgepole Road is a paved public road within the city limits of Helena." Further, the court found that "[t]he remaining 880 feet [of Lodgepole Road], of which all but 80 feet is paved, is subject to a public access easement." The court found that Sweetgrass Road is an unpaved road approximately 577 feet in length from its juncture with Lodgepole Road to Hampton's residence. The court found that Hampton attempted to secure public access easement grants from landowners on Sweetgrass Road, but that his attempts were unsuccessful, resulting in a "stalemate." The court thus determined that Hampton had demonstrated that Lodgepole Road had the necessary public access easements but that Sweetgrass Road did not.

12

¶37 The County first contends that the court erred in finding that Lodgepole Road is a public road. The District Court relied on Hampton's post-trial briefing for its findings. Hampton attested that Lodgepole Road is a public road and based this conclusion upon an engineering report he commissioned. That report does not state that Lodgepole Road is public; it merely discusses the specifications of the road. It characterizes Lodgepole Road as "an existing paved road," and states, "The portion of Lodgepole Road located east and south of the Helena city limits and Sweetgrass Road are located within private access easements." This directly conflicts with the court's finding that 880 feet of Lodgepole Road is subject to a public access easement. Further, the easement grant attached to Hampton's post-trial briefing does not demonstrate that the public access extends across all of Lodgepole Road. We agree with the County that the court's findings regarding Lodgepole Road are not supported by substantial evidence.

¶38 The County next argues that, given the lack of public access, the court must require strict compliance with Condition Six. The County contends that Hampton cannot improve the road without affecting other landowners. The County also argues that Hampton did not expend enough effort to secure public easement grants. Hampton admits that he did not offer compensation to the neighboring land owners, but suggests that he tried multiple times to get their permission. As the situation stands now, it appears that Hampton would be unable to prove that Lodgepole and Sweetgrass Roads are subject to public access easements.

¶39 Recognizing this reality, the court effectively modified Condition Six. Understanding that the County's reasoning for this condition was to ensure legal and physical access by emergency responders, it fashioned an alternative in order to compel the access the County

13

requested. The court prohibited Hampton from further dividing the parcel and required that he file an irrevocable deed restriction to eliminate the necessity for a public road. It also required Hampton to be responsible for upgrading the roads to ensure safe emergency access to the property. The court concluded that the upgrade of Sweetgrass Road to county standards would address the County's concerns about emergency services access. The court noted, "Since there will be no further division or development of the property, there is no legitimate reason to require a public access easement for the last home on the road." The District Court further determined that the improvements to Sweetgrass Road applied only to "the access easements set out on the property deeds" of neighboring landowners.

¶40 The court's order effectuates the County's desire to block additional residential development of the parcel and ensures needed emergency access. Even though Hampton did not obtain public access to Lodgepole and Sweetgrass Roads, we conclude that the County has not demonstrated legal error in the District Court's resolution of Condition Six.

### b. Proportional share of improvement costs

¶41 The County argues that the court also erred in requiring Hampton to contribute only proportionally to road improvements for Lodgepole Road. The County argues that Hampton's development in the South Hills "makes him 100% responsible for the physical adequacy of the roads used by the families accessing their homes on Lodgepole and Sweetgrass roads."

¶42 Condition Five requires Hampton to come up with a plan to improve Lodgepole and Sweetgrass Roads. Hampton argued that this condition unlawfully requires him to pay the entire cost of an upgrade. The District Court agreed with his assessment; it concluded that

14

Hampton could not be required to pay a disproportionate share of road maintenance simply as a punitive measure.

¶43    The court relied on a district court decision, *Christison v. Lewis and Clark Co. Comm.*, 2011 Mont. Dist. LEXIS 5 (1st Jud. Dist. Ct. Jan. 25, 2011), for the rule that a developer may not be required to upgrade or maintain a road disproportionately to the impact the development has on the road.  *Christison* involved a County policy that required developers, chosen on a random basis, to bear the entire cost of improvements to an off-site County road. *Christison*, ¶ 4.  The County imposed the entire cost regardless of the extent of the impact from the proposed developments. *Christison*, ¶ 4.  The court determined that this amounted to an unconstitutional taking of private property for public use under *Nollan v. Cal. Costal Commn.*, 483 U.S. 825, 107 S. Ct. 3141 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309 (1994).

¶44    A takings analysis is inapplicable to the present case.  Hampton was bound by the condition to improve the road because of the County's agreement to lift the agricultural covenant.  As we held in Hampton's prior appeal, the County was not required to consent to lifting the agricultural covenant on this property. *Hampton*, ¶ 51.  We therefore fail to see how requiring Hampton to comply with the conditions of that revocation constitutes a taking.  Unlike *Christison*, where no pre-development conditions were placed on the developer, Hampton violated conditions imposed on him.  He did not challenge those conditions at the time the County consented to revoke the agricultural covenant in 2004. Further, as the County points out and Hampton does not dispute, Hampton is the party responsible for the development in this area.  Lodgepole and Sweetgrass Roads are dead-end roads that service

15

only that development. Requiring Hampton to pay for the cost of upgrading Lodgepole Road is not disproportionate. It also is not punitive because the access is necessary to service his residence and was the County's primary reason for imposing conditions.

¶45 The District Court incorrectly concluded that Hampton could not be held responsible for the entire cost of upgrading Lodepole Road. We reverse this portion of its judgment and remand for entry of a modified judgment requiring Hampton to bear the entire cost of the upgrade.

### c. Injunctive relief and attorney's fees

¶46 Finally, the County argues that the District Court erred by failing to impose certain remedies the County requested in its post-trial briefing. Before the District Court, the County's requested relief included: requiring Hampton to remove the residence and recontour the lot to its preconstruction state; enjoining Hampton from using the property until the conditions are complete; imposing a lump sum penalty, compensatory damages, punitive damages, and otherwise to compensate the County for the costs of enforcement; and requiring Hampton to file an irrevocable deed restriction, preventing him from further dividing the property. On appeal the County argues, "The judgment on remand must order Hampton to pay the County's litigation expenses, an administrative penalty, and attorney[']s fees." The County does not seek the removal of Hampton's residence on appeal or any specific injunctive relief. It simply argues that the court committed reversible error by failing to impose any of the "combination of these remedies or forms of relief" it proposed. The County strenuously argues that Hampton was allowed to break the rules and to choose his own punishment.

¶47 The court did, however, impose some of the requested injunctive relief by prohibiting additional residential development on Hampton's parcel. Further, the County cites no statute or contract providing for an administrative penalty or an award of fees in this case. Absent contractual or statutory authority, attorney's fees generally will not be awarded. *Braach*, ¶ 8. A court may award attorney's fees under its equitable powers. *Braach*, ¶ 9. We previously have limited this equitable power to narrow circumstances "where a party has been forced to defend against a wholly frivolous or malicious action." *Braach*, ¶ 9. When a party institutes legal action, this exception is generally inapplicable. *Goodover v. Lindey's*, 255 Mont. 430, 447, 843 P.2d 765, 776 (1992). This exception also does not apply if the losing party had a reasonable basis to believe his cause may prevail. *Goodover*, 255 Mont. at 447, 843 P.2d at 776.

¶48 As the District Court recognized, there is not a clear prevailing party because the County did not obtain all of the relief it sought. Although the jury determined that Hampton had notice of and violated the conditions, he had colorable arguments for why he believed he had complied substantially with the remaining conditions. Further, the County instituted the action against Hampton rather than being "forced to defend against a wholly frivolous or malicious action." *Braach*, ¶ 9. Accordingly, the District Court did not abuse its discretion in concluding that the circumstances of this case do not fall within the narrow exception for an equitable award of fees.

¶49 The Act does not authorize a civil penalty or enforcement costs as a form of relief. The Act provides a misdemeanor criminal penalty for "[a]ny person who violates any provision of this chapter . . . ." Section 76-3-105, MCA. It does not appear that the County

17

pursued criminal charges against Hampton. In interpreting statutes, our role is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . . ." Section 1-2-101, MCA. The District Court did not err in denying Hampton's request for a civil, administrative penalty or for enforcement costs because there is not authority for such penalties in the applicable law. The County has cited no other legal basis upon which the Court could assess a civil penalty in this case.

¶50 The Dissent criticizes both the District Court and this Court for making "planning judgments on behalf of the County." Dissent, ¶ 66. Instead, the Dissent would remand to the District Court for entry of judgment that the agricultural covenant remains in effect and determination of the appropriate remedy for Hampton's violation. Dissent, ¶ 68. As noted above, however, the County's pleadings did not request a declaration that the property remain under an agricultural covenant. Based on the presentation of the case by the parties and the relief requested by the County, the District Court already has thoroughly considered Hampton's violations and determined the appropriate manner to require satisfaction of the "13 conditions of approval," one of the alternative forms of relief specifically sought in the County's amended complaint. We decline to consider arguments the County did not make.

**CONCLUSION**

¶51 The District Court's rulings on the cross-motions for summary judgment are affirmed. We reverse the court's determination that Hampton is only proportionally responsible for improving Lodgepole Road. The remainder of the court's final judgment is affirmed. The case is remanded for entry of a modified judgment in accordance with this Opinion.

18

/S/ BETH BAKER

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice Laurie McKinnon dissents.

¶52     The Court affirms a flawed judicial resolution of matters rightly within the discretion of local government.  I believe the District Court erred by finding on summary judgment that the agricultural covenant had been revoked, and compounded that error by failing to recognize the existence of the covenant as the dispositive issue in this litigation.  Had the District Court properly resolved this issue in the first instance, it would not later have been forced to address such matters as the need for public access easements or the road width necessary to ensure emergency vehicle access.  These matters are within the province of local government, and neither the District Court nor this Court should invade that province by effectively granting variances from County regulations.  Nevertheless, that is exactly the outcome reached today.  Accordingly, I dissent.

¶53     I begin by noting that the County's pleadings sought only enforcement of the covenant.  Although the District Court regarded the issue of whether the agricultural covenant remained in effect as "a distinction without a difference," the existence of an agricultural covenant makes a significant difference to the County's enforcement powers. A "Certificate of Facts Exempting Division of Land for Agricultural Purpose from Review as a Subdivision," filed with the Certificate of Survey in 1993, specifically states that the

19

governing body of Lewis and Clark County "is deemed to be a party to and may enforce this covenant." *Hampton v. Lewis & Clark Cnty.*, 2001 MT 81, ¶ 6, 305 Mont. 103, 23 P.3d 908. If the covenant remains in effect, the County can enforce it. If the covenant no longer exists, there is nothing for the County to enforce. Although the litigation has proceeded—for more than five years now—under the assumption the County can require Hampton to perform the conditions after revocation of the covenant, neither party has identified any legal authority allowing the County to do so. The Court persists in this error, acknowledging Hampton's "violations," Opinion, ¶ 50, but failing to identify what, as a matter of law, has been violated.

¶54 Although the County's pleadings sought enforcement of the covenant, the County also referenced the Montana Subdivision and Platting Act. Sections 76-3-101 to -625, MCA. Thus, after finding on summary judgment that the covenant had been revoked, the District Court issued a pretrial order reframing the central question as whether Hampton had evaded subdivision review under the MSPA. Even if he had, the MSPA does not provide the remedy fashioned by the District Court in this case. A developer who fails to comply with the requirements of subdivision review will simply not be granted final plat approval. Section 76-3-611, MCA. Without final plat approval, a developer is prohibited from selling, leasing, or transferring the property and may be charged with a misdemeanor for doing so. Section 76-3-105, MCA. The County has not filed misdemeanor charges against Hampton. The MSPA contemplates no other remedy. *See* Opinion, ¶ 49.

¶55 That is not to say the MSPA has no bearing on the present case. The provisions of the MSPA must be considered in concert with the effect of the agricultural covenant. With respect to agricultural covenants, the MSPA provides as follows: "a change in use of the land

exempted under subsection (1)(c) for anything other than agricultural purposes subjects the division to review under parts 5 and 6 of this chapter." Section 76-3-207(2)(b), MCA. This Court has not previously considered this provision, and I believe it should do so today. In order for this provision to have any effect, the agricultural covenant must remain in place until the subdivision review process has been completed.

¶56    When a subdivision is exempted from review pursuant to an agricultural covenant, the covenant is to be noted on the plat itself or in an instrument recorded with the plat. Section 76-3-306, MCA. If the covenant is revoked, the MSPA does not require the property to be conveyed to the original owner and joined with the parcel from which it was originally divided. *See* § 76-3-207(2)(b), MCA. This would be an impractical requirement. As a matter of common sense, when an agricultural covenant is revoked, the plat reflecting the subdivision remains of record. A plat may not be recorded unless the governing body has granted its final approval. Section 76-3-301(1), MCA. Thus, when an agricultural covenant is removed from a recorded plat, the status of the plat is the same as if it had been through subdivision review and earned final approval.

¶57    After final approval of a subdivision, the governing body has no power to enforce conditions or require improvements other than through a subdivision improvement agreement secured by a bond. Section 76-3-507, MCA. A governing body has no power to revoke an agricultural covenant or grant final plat approval and then require a developer to comply with subdivision regulations after the fact. Subdivision review must therefore take place prior to revocation of an agricultural covenant.

¶58 Hampton's request for revocation of the agricultural covenant initiated review of the division of land that resulted in creation of the covenant in 1993. Section 76-3-207(2)(b), MCA. Review begins with submission of a subdivision application and preliminary plat containing detailed information, including preliminary water and sanitation information. Sections 76-3-601, -622, MCA.

¶59 After submission of a complete subdivision application, the governing body may approve, conditionally approve, or deny the application. Section 76-3-604, MCA. Conditional approval is valid for at least one year, during which time the governing body may not impose additional conditions. Section 76-3-610, MCA. The developer must complete the required improvements prior to approval of the final plat. Section 76-3-507(1), MCA. Alternatively, the developer may provide a bond securing the construction of required improvements within a period specified by the governing body. Section 76-3-507(2), MCA. Where an agricultural covenant is in place, construction of improvements is not appropriate. A subdivision improvement agreement secured by a bond ensures that the necessary improvements will be made after the agricultural restriction is lifted. During the conditional approval period, the developer can take steps that do not require physical construction, such as securing easements from neighboring property owners.

¶60 The governing body can grant final approval of a subdivision plat only when all requirements of the conditional approval have been met or a subdivision improvement agreement is in place. Sections 76-3-507, -611, MCA. In the context of a property subject to agricultural covenant, if the developer is unable to demonstrate that the requirements of the conditional approval can be met, the covenant should remain in effect and the property

22

revert to agricultural use. Whether the agricultural covenant remained in effect is therefore not "a distinction without a difference," but instead should have been the dispositive issue in this protracted litigation.

¶61 The evidence presented to the District Court at the summary judgment stage shows that the County did not intend to revoke the agricultural covenant until after Hampton had satisfied the thirteen conditions placed on the revocation. At the September 9, 2004 meeting of the Board of Commissioners, Planning Department director Sharon Haugen advised the commissioners that her staff would "recommend[] two conditions upon the approval of the revocation of [the] agricultural covenant . . . ." The commissioners then asked deputy county attorney K. Paul Stahl to address "conditioning the revocation of the agricultural covenant." Stahl indicated "[t]he commission may condition lifting of the covenant if they deem fit. . . . The commission would view the parcel, upon lifting of the agricultural covenant, as it was when it was originally created by process of subdivision and would then place conditions on the 12 acre parcel." These statements are largely consistent with the process of conditional approval of a subdivision application. Moreover, to the extent that Hampton relies on these statements to support the position that the County intended to revoke the covenant before the conditions were satisfied, it is important to note that these preliminary deliberations should not be construed as conclusive evidence of the commission's final action. The commission did not take final action until two weeks later, and was not bound to accept the recommendations made at this meeting. *See Allen v. Lakeside Neighborhood Planning Comm.*, 2013 MT 237, ¶ 28, 371 Mont. 310, 308 P.3d 956.

23

¶62 A memorandum to the commission dated September 21, 2004 indicates that additional legal consultation took place after the September 9, 2004 meeting. At the September 23, 2004 meeting, the commissioners voted "to approve the revocation subject to 13 conditions." Following that meeting, the commission issued findings of fact and conclusions of law, which read as follows:

> Based on the above findings and conclusions, the Commission voted 3-0 to revoke the Agricultural Covenant [on the Hampton parcel] subject to the following:
>
> CONDITIONS FOR THE LIFTING OF THE HAMPTON AGRICULTURAL COVENANT
>
> Any and all development [on the Hampton parcel] is subject to the following conditions:
>
> Prior to any development, Mr. Hampton and his successors must submit their proposed development to the Lewis and Clark Planning Department for its written approval. Approval will be granted only upon a determination by the planning department that the following conditions have been met . . . .

The "subject to" language used by the County is commonly used when referring to conditional approval of a subdivision application. *See e.g. Broadwater Dev. L.L.C. v. Nelson*, 2009 MT 317, ¶ 4, 352 Mont. 401, 219 P.3d 492 ("The preliminary approval was subject to 25 conditions that had to be met before the subdivision could receive final approval."); *Kiely Constr. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 2, 312 Mont. 52, 57 P.3d 836 ("Red Lodge conditionally approved Kiely's application, subject to [26] conditions.").

¶63 A letter dated September 24, 2004, addressed to Hampton from the chairman of the Board of Commissioners, reads in part: "Please work closely with the County Planning

Department as you proceed with the fulfillment of the conditions placed on the revocation. Once all the conditions of this preliminary approval have been met, the Agricultural Covenant can be lifted." Furthermore, it was undisputed at the summary judgment hearing that the agricultural covenant was never removed from the land records, a fact given almost no significance by either this Court or the District Court. The Court acknowledges that the purpose of recordation is "to prohibit further development until the developer has complied with the conditions." Opinion, ¶ 27. The Court does not explain why it finds this rule inapplicable to Hampton, other than to say that the County's "consent to revoke the covenant" cannot be read to mean "nothing." Opinion, ¶ 28. To that extent, I agree. The County's actions can, and must, be read as granting conditional approval of Hampton's request for revocation, with final approval to be given upon completion of the conditions. Conditional approval does not mean "nothing." The County's conditional approval was a significant benefit to Hampton, as it notified him of the requirements for final approval, provided him a reasonable period of time to complete those requirements, and ensured that the County could not impose new requirements during that time. Section 76-3-610, MCA.

¶64 The evidence clearly shows that the commission intended to require completion of the conditions prior to revoking the agricultural covenant. The County was therefore entitled to judgment in its favor. The Court disagrees, claiming the County "did not request a declaration that the property remain under an agricultural covenant." Opinion, ¶ 50. The record demonstrates otherwise. In its response to Hampton's motion for summary judgment on the issue of the agricultural covenant, the County twice claimed it was entitled to judgment as a matter of law. The County concluded by "ask[ing] the Court to grant

summary judgment in favor of the County based on the undisputed facts in this case." At the hearing on the motion, the County repeated its request for the District Court to find that the agricultural covenant remained in place and accordingly enter judgment in favor of the County. The Court's refusal to "consider arguments the County did not make," Opinion, ¶ 50, ignores the fact that the County argued vociferously for enforcement of the agricultural covenant from the time it filed its complaint. The County's request for enforcement of the covenant implicitly required a determination that the covenant could be enforced.

¶65   If the District Court had properly resolved the summary judgment issue and recognized the significance of the agricultural covenant, it would not have been necessary to litigate whether Hampton had notice of the conditions and which conditions had been satisfied. The recorded agricultural covenant would have imparted constructive notice that the property was unsuitable for development. *Earl v. Pavex Corp.*, 2013 MT 343, ¶ 17, 372 Mont. 476, 313 P.3d 154 (citing *Erler v. Creative Fin. & Invs.*, 2009 MT 36, ¶ 21, 349 Mont. 207, 203 P.3d 744). Any non-agricultural use of the property would have been a violation. There would have been no role for a judge or jury in assessing the relative completion or necessity of the conditions imposed by the County.

¶66   Instead, the District Court asked a jury to sit in the place of the Planning Department and determine whether Hampton had developed his property in accordance with the County's requirements. The District Court itself then evaluated the conditions Hampton had failed to meet, determining there was "no legitimate reason to require a public access easement," and requiring Hampton to improve the roads providing access to his property only "within the access easement(s) set out on the property deeds," which the neighboring

26

property owners claim are too narrow to allow access by emergency services. Essentially, the District Court stepped into the shoes of the County and granted a variance from subdivision regulations on its behalf. The Court, affirming this resolution, concludes the outcome "ensures needed emergency access," but fails to explain how—because it does not. Opinion, ¶ 40. It was both unnecessary and inappropriate for the District Court to make such planning judgments on behalf of the County, and this Court should not allow that result to stand.

¶67 The Court asserts the District Court granted the relief sought in the County's complaint when it "determined the appropriate manner to require satisfaction of the '13 conditions of approval.'" Opinion, ¶ 50. The County's request for this relief reflected its continued willingness to revoke the agricultural covenant if the property could be made suitable for residential development. In the judgment of the Board of Commissioners, satisfaction of all thirteen conditions was necessary to mitigate the effects of development and allow removal of the agricultural covenant. If this could not be accomplished, the County sought alternative relief including removal of the residence, a permanent injunction prohibiting residential use of the property, or an appropriate monetary penalty. The District Court ordered only partial completion of the conditions, a result which neither makes the property suitable for residential use nor restores it to agricultural use.

¶68 I would reverse and grant summary judgment to the County on the issue of whether the agricultural covenant had been revoked. I would then remand to the District Court solely to determine the appropriate remedy for Hampton's violation of the agricultural covenant.

/S/ LAURIE McKINNON